IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

GEORGE ERWIN WHEELER,    )
    )
    Plaintiff,    )
    )
    )    CIV-13-410-M
v.    )
    )
CAROLYN W. COLVIN,    )
  Acting Commissioner of Social    )
  Security Administration,    )
    )
    Defendant.    )

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of

Defendant Commissioner denying his application for supplemental security income benefits

under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382. Defendant has

answered the Complaint and filed the administrative record (hereinafter TR___), and the

parties have briefed the issues. The matter has been referred to the undersigned Magistrate

Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following

reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

On July 14, 2010, Plaintiff protectively filed an application for benefits, alleging that

he became disabled on July 5, 2010. (TR 134-140, 171). Plaintiff was 46 years old at that time. (TR 134). Plaintiff had previous work experience as a roofer, and he last worked on January 1, 2001. (TR 175, 176). He alleged disability due to a back injury, left arm infection, bipolar disorder, anxiety disorder, and schizoaffective disorder. (TR 175).

The medical record reflects that Plaintiff underwent surgery in 2001 to repair a left-sided herniated disc at one level in his lumbar spine.(TR 414). At that time, Plaintiff gave a history of bipolar disorder and previous hospitalization for mental illness. (TR 412). MRI testing of Plaintiff's lumbar spine in January 2002 showed a small bulging disc at one level. (TR 422). He was prescribed pain and anti-anxiety medication and underwent an epidural steroid injection. In August 2007, Plaintiff was treated by an orthopedic surgeon, Dr. Smith, following a motor vehicle accident. Dr. Smith noted that testing showed a herniated disc at one level of Plaintiff's cervical spine and an annular disc bulge at a second level, spondylosis in the thoracic spine, and herniated discs at three levels of the lumbar spine, for which anti-inflammatory medication was prescribed. (TR 425-426).

In February 2010, Plaintiff was treated at a hospital emergency room after his girlfriend reported witnessing him have a seizure. (TR 219). The attending physician, Dr. Gilliam, noted that Plaintiff had not been on antiseizure medication and that he had a history of a closed head injury with some brain damage from trauma in 1997. He also gave a history of chronic back pain, chronic use of Lortab, a narcotic pain medication, and having been "cut off" from receiving Lortab prescriptions at two hospitals. He reported taking previously-prescribed Tramadol, a non-narcotic pain medication, prior to the seizure.

Dr. Gilliam noted a physical examination of Plaintiff and EKG testing were normal. (TR 220). Plaintiff was advised to stop taking Tramadol and to stop drinking alcohol. (TR 221). He was prescribed medication to relieve alcohol withdrawal symptoms.[1] Plaintiff later reported to a consultative examiner in November 2010 that he had no further seizures after he stopped taking Tramadol. (TR 332). A CT scan of Plaintiff's head conducted in February 2010 was interpreted as showing an area of encephalomalacia (loss of brain tissue) in the right frontal lobe and to a lesser extent in the medial aspect of the left frontal lobe. (TR 237).

In May 2010, Plaintiff was treated at a hospital emergency room with pain and muscle relaxant medications for back pain. (TR 246-248). Plaintiff described the pain as burning pain down his right leg that had been present for two months, and he related the pain to a 2007 motor vehicle accident.

Plaintiff was treated at a hospital in July 2010 for a left arm abscess and cellulitis. (TR 261, 288). The attending physician, Dr. Meyer-Hanner, noted that Plaintiff reported a two-week history of left arm swelling, redness, and pain, and that Plaintiff worked as a septic tank installer, mechanic, and concrete worker. (TR 256). In a consultative examination conducted by Dr. Eldridge, the physician noted Plaintiff denied taking medication or any chronic medical conditions, although he provided a history of schizoaffective disorder, bipolar disorder, and previous back surgery for a work-related injury. (TR 287-288). During his three-week hospitalization, Plaintiff underwent multiple surgical procedures, including

---

[1]Plaintiff reported to an examining physician in July 2010 that he had been drinking "a case of beer per day" until he quit drinking two months previously. (TR 256).

removal of part of his left biceps tendon. Plaintiff improved, and he was discharged on July 29, 2010. (TR 254-255).

Plaintiff underwent a consultative physical examination in October 2010 conducted by Dr. Buffington. (TR 324-329). Dr. Buffington reported that Plaintiff exhibited decreased range of motion in his cervical spine, lumbar spine, and shoulders, wasting of his left biceps muscle, good grip strength, stable gait, positive straight leg raising test in both legs with sciatic radiation and numbness in the right foot, and left arm weakness. (TR 325). The diagnostic impression was left upper extremity weakness/injury, back pain, and depression.

In November 2010, Plaintiff underwent a consultative psychological evaluation conducted by Dr. Waller, Ph.D. (TR 331-334). Dr. Waller reported that Plaintiff gave a history of working an assortment of jobs, including mechanic, roofer, cashier, and cook, previous homelessness and alcohol abuse, two previous assault and battery convictions, two previous DUI offenses, previous mental health treatment with diagnoses in 1986-87 of bipolar disorder, schizoaffective disorder, and severe anxiety for which he took anti-anxiety medication, and two previous suicide attempts. (TR 331). In a mental status examination, Dr. Waller reported that Plaintiff evidenced no attention or communication deficits, accelerated but properly organized thought processes and appropriate thought content, average to above average intellectual functioning, no reasoning or general information deficits, and no impairment in social judgment. (TR 333). Dr. Waller's diagnostic impression was mood disorder not otherwise specified, obsessive compulsive disorder, and possible personality disorder not otherwise specified by "self report" and "overall history."

4

(TR 334). The remainder of the medical record will be discussed below in connection with Plaintiff's arguments.

Plaintiff testified at a hearing conducted before Administrative Law Judge Gordon ("ALJ") on November 15, 2011. Plaintiff stated that his last "regular work" was as a roofer in 2000, that he had been incarcerated in 2006, and that he had been convicted of a second offense of driving under the influence in 2010 although he had been sober for "over a year" at the time of the hearing. (TR 45-48). Plaintiff stated he could not work because of anxiety and concentration problems. (TR 49-50). Plaintiff testified that his ability to perform household chores was limited by back pain, arm pain, pain in his right leg, and a weak ankle. (TR 50-51). He was taking Lortab and Valium on a daily basis and was dependent on a friend for his medications, medical treatment, housing, and food. (TR44, 52). A vocational expert ("VE") also testified at the hearing. (TR 36-59).

## II. ALJ's Decision

In the ALJ's decision entered January 6, 2012 (TR 22-31), the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 14, 2010, the application date. (TR 24). Following the agency's well-established sequential evaluation procedure, the ALJ found at the second step that Plaintiff had severe impairments due to "partial left biceps muscle removal; a closed head injury with brain damage and seizures; bipolar I disorder, single manic episode, mild; schizophreniform disorder, unspecified state; herniated disc at C6-C7, L3-L4, L4-L5, and L5-S1; annular disc bulging at C5-C6; and thoracic spondylosis. (TR 24).

Considering several specific requirements of the listings at step three, including

Listing 1.08, Listing 1.04, Listing 12.02, Listing 12.03, Listing 12.04, and Listing 12.06, the ALJ found that Plaintiff's impairments were not *per se* disabling as they did not meet the requirements of any listed impairment. (TR 24-25). At the fourth step, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with limitations. (TR 25-26). Those limitations included occasional crawling, stooping, kneeling, crouching, and walking up and down stairs, no use of a ladder, avoiding all work-related "hazards," limited use of his left upper extremity to reach, and "limited to simple tasks with limited interaction with the public." (TR 26).

Because Plaintiff had no relevant past work, the ALJ proceeded to the fifth and final step of the evaluation process. At step five, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act because he was able, given his RFC for work and vocational characteristics, to perform work available in the economy, including the jobs of security system monitor, document specialist, and addressing clerk. (TR 30).

Plaintiff submitted additional medical evidence to the Appeals Council with a request to review the decision. All of this evidence concerned Plaintiff's medical treatment *after* the ALJ's decision in January 2012. (TR 450-458). Nevertheless, the Appeals Council stated that it had considered the additional evidence and made it part of the record. (TR 1, 5). However, the Appeals Council stated that it had "looked at" a physical medical source statement dated September 26, 2012,[2] and provided by Plaintiff with his request for review.

---

[2]This medical source statement does not appear in the record, but Plaintiff does not complain that the record is incomplete because of the missing medical source statement.

(TR 1-2, 5). The Appeals Council stated that this medical source statement was "new information" which concerned "a later time" after the ALJ's decision, and therefore "it does not affect the decision about whether you were disabled beginning or on before January 6, 2012. (TR 2). The Appeals Council denied Plaintiff's request for review, and consequently the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. § 416.1481; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

III. Standard of Review

In this case, judicial review of the final Commissioner's decision is limited to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

IV. Analysis of Medical Source Opinions

Plaintiff contends that the ALJ erred in analyzing the medical source opinions of Plaintiff's treating physician, Dr. Angela Morgan, M.D., and Plaintiff's treating

7

paraprofessional, Ms. Margret Lorimor, a certified family nurse practitioner. The Commissioner responds that the ALJ appropriately considered Dr. Morgan's medical source statement and provided reasons supported by the evidence for giving the opinion little weight.

The record shows that Plaintiff was treated by Dr. Morgan on four occasions between August 2010 and December 2010. At his initial office visit, Plaintiff provided a history of left bicep removal in July 2010, anxiety, and previous back surgery. (TR 383). He stated he had been taking pain medication since he left the hospital following his July 2010 treatment. Dr. Morgan noted she reviewed medical records from 2007 showing Plaintiff had bulging discs and spondylosis in his neck and lumbar spine. Dr. Morgan prescribed pain medication for chronic pain and anti-anxiety medication for anxiety. (TR 368, 377, 379, 383).

In November 2010, Dr. Morgan advised Plaintiff to seek treatment with a pain management specialist. (TR 385). At the same time Plaintiff requested that Dr. Morgan draft a letter stating that he was disabled so that he could attempt to obtain food stamps. (TR 373). The following day, Plaintiff was notified that the letter could be picked up from the office. (TR 373). In this undated letter, Dr. Morgan stated that she had been Plaintiff's primary care physician since August 2010, that he had a history of hypertension, degenerative disc disease, and a staph infection in his arm which required multiple surgeries and had left him with "much residual defect in his arm." (TR 374). Dr. Morgan stated that "[d]ue to this defect and his preexisting back trouble, he is currently unable to work" and "is disabled to the point of being unable to support himself." (TR 374).

The ALJ's decision recognized that Dr. Morgan had authored this medical source opinion. The ALJ reasoned that the opinion did not identify specific functional restrictions and therefore it was given "little weight." (TR 29).

When an ALJ considers the opinion of a disability claimant's treating physician, the ALJ must follow a specific procedure in analyzing the medical opinion. Generally, an ALJ must give the opinion of an acceptable treating source controlling weight if it is both well-supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record. Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p, 1996 WL 374188, at *2). Where an ALJ finds that a treating physician's opinion is not entitled to controlling weight, the ALJ must decide "where the opinion should be rejected altogether or assigned some lesser weight." Pisciotta v. Astrue, 500 F.3d 1074, 1077 (10th Cir. 2007).

"Treating source medical opinions not entitled to controlling weight 'are still entitled to deference' and must be evaluated in light of the factors in the relevant regulations, 20 C.F.R. §§ 404.1527 and 416.927." Newbold v. Colvin, 718 F.3d. 1257, 1265 (10th Cir. 2013)(quoting Watkins, 350 F.3d at 1300). An opinion that a claimant is disabled "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner.]" Castellano v. Sec'y of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994).

In this case, Dr. Morgan gave a medical opinion in which the physician merely stated a conclusion that Plaintiff was disabled by the residual effects of his left arm infection and

degenerative disc disease. The ALJ did not err, and provided a valid reason, in rejecting this opinion as it presented an opinion on an issue reserved to the Commssioner.

The record contains a second medical source statement authored by Plaintiff's treating nurse practitioner, Ms. Lorimor. The record shows that Plaintiff was treated by Ms. Lorimor on several occasions between December 2010 and October 2011. (TR 403-405, 437-445). Ms. Lorimor's office notes reflect that she treated Plaintiff with pain, mood stabilizing, and anti-anxiety medications for lumbago, bipolar I disorder, and schizophreniform disorder.

In a mental status form dated January 17, 2011, Ms. Lorimor opined that due to his bipolar disorder Plaintiff should avoid stress but he was able to comprehend and carry out simple and complex tasks on a regular basis. (TR 402).

In a physical medical source statement dated November 10, 2011, Ms. Lorimor opined that Plaintiff had a diagnosis of "back pain" for which she treated him on a monthly basis and a personality disorder. (TR 433-434). Ms. Lorimor stated that Plaintiff could sit for at least six hours and stand/walk for about two hours in an eight-hour workday, needed to shift positions, and needed five minute periods for walking every 60 minutes during the day. (TR 434). She also stated that Plaintiff would need two unscheduled breaks during the workday, each lasting 15 minutes due to pain and numbness, that he would be "off task" in attention and concentration for 25% or more during the workday, that he was incapable of even "low stress" work due to bipolar and anxiety disorders, and that he would likely be absent from work more than four days per month. (TR 434-436).

The ALJ expressly considered Ms. Lorimor's medical source statements in the

decision, although the ALJ incorrectly identified Ms. Lorimor as a "physician." (TR 29).

With respect to Ms. Lorimor's January 2011 statement, the ALJ found that the RFC

limitations imposed on Plaintiff for simple tasks with limited interaction with the public

would accommodate his need to reduce stress to a manageable level and that despite the

diagnoses of bipolar I disorder and schizophreniform disorder Ms. Lorimor's "concurrent

progress notes do not reference related positive findings upon mental status examination."

(TR 29).

With respect to Ms. Lorimor's November 2011 statement, the ALJ reasoned that the

severe limitations set forth in the medical source statement "are not supported by positive

findings upon physical examination or laboratory testing." (TR 29). Thus, the ALJ

concluded that the opinion was entitled to "little weight." (TR 29).

The agency's regulations distinguish between opinions from "acceptable medical

sources," who are defined as licensed physicians, psychologists, podiatrists, and qualified

speech-language pathologists, and other health care providers who are not "acceptable

medical sources." 20 C.F.R. §§ 416.913(a), (d)(1).

SSR 06-3p "clarifies how [the Commissioner] consider[s] opinions and other evidence

from medical sources who are not 'acceptable medical sources.'" SSR 06-3p, 2006 WL

2329939, at *4. The agency states in the ruling that the clarification is necessary because

> [w]ith the growth of managed health care in recent years and the
> emphasis on containing medical costs, medical sources who are
> not "acceptable medical sources," such as nurse practitioners,
> physician assistants, and licensed clinical social workers, have
> increasingly assumed a greater percentage of the treatment and

evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources ... are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

Id. at *3.

To effectively further this policy, the agency advised that "[a]djudicators generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence ... allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." Id. at *6. The ruling specifically advises that "[s]ince there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not 'acceptable medical sources' and from 'non-medical sources' who have seen the claimant in their professional capacity." Id. at * 6.

Because "all the ALJ's required findings must be supported by substantial evidence," Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999), the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects." Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1995).

The ALJ expressly considered Ms. Lorimor's opinion and provided reasons that are well supported by the evidence for rejecting the opinion. Ms. Lorimor's office notes of her treatment of Plaintiff are brief and indicate that she prescribed medications based largely on Plaintiff's subjective complaints. The office notes provide no objective findings that were

12

consistent with the extreme functional limitations set forth in the medical source statement,

For instance, in October 2011, Ms. Lorimor noted that Plaintiff was "doing well here for

follow up." (TR 437). Moreover, Ms. Lorimor's medical source statement provides no

objective evidence to support the conclusory findings contained in the statement. The ALJ

did not err in analyzing Ms. Lorimor's medical source statement or in assigning the statement

little weight.

V. Duty to Develop the Record

Plaintiff contends that the ALJ erred by failing to recontact Dr. Morgan to clarify her

opinion letter. Effective March 26, 2012, the regulations provide that if an ALJ determines

there is insufficient evidence to determine disability the ALJ "may recontact [a] treating

physician, psychologist, or other medical source," "request additional existing records" or

seek further evidence from another source, including the claimant or a consultative examiner.

20 C.F.R. § 416.920b. In this instance, the medical record is more than sufficient to allow

the ALJ to determine the merits of Plaintiff's disability application. Dr. Morgan provided

her treating record, and it is only "the inadequacy of the evidence the ALJ receives from the

claimant's treating physician that triggers the duty" to recontact the physician. White v.

Barnhart, 287 F.3d 903, 908 (10th Cir. 2001). The ALJ did not find that Dr. Morgan's

evidence was incomplete or needed clarification. Rather, the ALJ found that Dr. Morgan's

treatment records simply were not consistent with her opinion letter. Under these

circvumstances, the ALJ did not err by failing to recontact Dr. Morgan with respect to her

opinion letter.

VI. <u>Step Three Determination</u>

Plaintiff lastly contends that the ALJ erred by not finding that his spinal impairments satisfied the requirements of Listing 1.04(A) (disorders of the spine). At the third step of the requisite sequential evaluation procedure, the ALJ "determines whether the impairment is equivalent to one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity," pursuant to 20 C.F.R. § 416.920(d). <u>Bowen v. Yuckert</u>, 482 U.S. 137, 141 (1987). "[S]tep three streamlines the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." <u>Id.</u> at 153. "If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled." <u>Id.</u> at 141.

Listing 1.04(A) requires medical evidence of a spinal disorder "resulting in compromise of a nerve root (including the cauda equina) or the spinal cord" with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A).

Plaintiff refers to MRI findings that he has herniated discs in his cervical and lumbar spines. He also refers to evidence in the record that he has loss of range of motion in his back and positive straight leg raising test on physical examination. Plaintiff also cites

evidence in the record showing that an MRI was interpreted as showing nerve root contact and annulus fibrosis tears.[3] However, as Defendant points out, Plaintiff has not pointed to medical evidence in the record showing sensory or reflex loss or nerve root compression, and the record does not reflect findings that satisfy all of the requirements of the Listing. Therefore, there is substantial evidence in the record to support the Commissioner's step three finding.

<u>RECOMMENDATION</u>

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's application for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before _____ March 17th , 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. <u>Moore v. United States</u>, 950 F.2d 656 (10th Cir. 1991); <u>cf.</u> <u>Marshall v. Chater</u>, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed

---

[3]The Appeals Council stated that it had considered this evidence and made it a part of the record.

herein is denied.

ENTERED this _____24th_____ day of _____February_____, 2014.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE